**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

KIMBERLY JO L.,[1]                          )
                                            )
                Plaintiff,                  )
                                            )
vs.                                         )        Case No. 20-cv-317-DWD
                                            )
COMMISSIONER OF SOCIAL                      )
SECURITY,                                   )
                                            )
                Defendant.                  )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Supplemental Income Security ("SSI") benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for SSI in October 2016, alleging disability beginning on September 27, 2011 (Tr. 216). Plaintiff, through her representative, amended her alleged onset date to October 8, 2016 (Tr. 229). Plaintiff's claim was denied initially on February 28, 2017 and upon reconsideration on August 22, 2017 (Tr. 28). After the state agency denied Plaintiff's application, two evidentiary hearings were held before Administrative Law Judge ("ALJ") Stuart T. Janney. At the November 15, 2018 evidentiary hearing, Plaintiff's representative appeared without Plaintiff and testimony was received by

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

vocational expert Robert L. Bond (Tr. 28).  Plaintiff and her representative appeared at the supplemental evidentiary hearing on March 14, 2019 (Tr. 28).  ALJ Janey denied the application for benefits in a decision dated April 18, 2019 (Tr. 25).  The Appeals Council denied Plaintiff's request for review on March 15, 2020 (Tr. 17), making the ALJ's decision the final agency decision subject to judicial review (Tr. 5).  20 C.F.R. § 404.981.  Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[2]  Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to

---

[2]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).   "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  Judicial review of the ALJ's decision is limited to determining whether the decision is "both supported by substantial evidence and based on the proper legal criteria." *Briscoe,* 425 F.3d at 351 (citing *Scheck v. Barnhart*, 336 F.3d 697, 699 (7th Cir. 2004); *Stephens,* 888 F.3d at 327 (The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law.").

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).   "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014).  Even if reasonable minds could differ as to whether the

3

claimant is disabled, courts must differ to the ALJ's resolution if the opinion is adequately explained and supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Elder*, 529 F.3d at 413.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. Plaintiff was 38 years old on the alleged disability onset date (Tr. 41). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 30). The ALJ found that Plaintiff had the following severe impairments that "significantly limit the ability to perform basic work activities":

> lumbar vertebral fracture; prior thoracic spinal fusion; degenerative changes of the lumbar and thoracic spine; degenerative joint disease and/or osteoarthritis; obesity; fibromyalgia syndrome; type 1 diabetes mellitus; dysthymic disorder, early onset; persistent depressive disorder/unspecified depressive disorder; bipolar disease; generalized

4

> anxiety disorder, and agoraphobia; somatic symptom disorder and pain disorder associated with psychological factors and a general medical condition; and post-traumatic stress disorder

(Tr. 30-31).  The ALJ concluded that these impairments did not meet or equal a listed impairment (Tr. 31).

The ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with these additional qualifications:

> [S]he can frequently climb ladders, ropes, or scaffolding. She can frequently stoop and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, and hazards such as exposed moving machinery and unprotected heights. She can remember locations and work-related procedures. She can understand, remember, and carry out rote or routine instructions or tasks that require the exercise of little independent judgment or decision-making at a consistent, average production pace over the course of a workday, but not if the tasks are complex. She can persist at and complete work activity for the usual periods required in the general work force, which would be the two-hour segments that make up an eight-hour workday. She can maintain a schedule, on time attendance, and can complete a normal workday and workweek on a regular basis. She can perform at minimally acceptable rates, requiring only the common frequency and lengths of rest breaks. She should work in a socially undemanding and restricted setting in that the individual should have no work-related interaction with the public. She can relate acceptably with supervisors and coworkers to a minimally necessary degree on no more than an occasional basis. She can use public transportation to and from a place of work.

(Tr. 34).  The ALJ found that Plaintiff has no past relevant work (Doc. 41).  Then, relying on the testimony of a vocational expert, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the representative occupations of checker, routing clerk, and mail sorter (Tr. 42).  Accordingly, the ALJ found that Plaintiff is not disabled (Tr. 42-43).

### The Evidentiary Record[3]

### *A.    Plaintiff's Testimony*

Plaintiff alleges that she is disabled due to problems with her back, degenerative joint disease, diabetes, bipolar disorder, PTSD, depression, and anxiety (Tr. 235).  Plaintiff completed a function report in October 2016, where she reported difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, her memory, completing tasks, and concentration (Tr. 254-265).  She indicated that she could not lift anything heavier than a half-gallon of milk, could not stand for more than 10 minutes, could not sit for more than 30-45 minutes, and was unable to walk half a block (Tr. 260).  Plaintiff completed a second function report in June 2017 with similar allegations, except, this time she reported that she had difficulty with her memory, understanding, and concentration (Tr. 303- 313).  She also reported that she was unable to sit or stand for more than 15-20 minutes, although she could tie her shoes, handle money, maintain a household, and care for her children (Tr. 305-308).

On March 14, 2019, Plaintiff provided testimony (Tr. 50-77).  She stated that she broke her lower back in 2011 and had four back surgeries from 2012 through 2014. Plaintiff reported that she had spasms which cause profuse sweating daily, and that she needs to lie down two to three times a day for an hour each to help relieve her pain. Plaintiff uses a TENS unit, heat, and ice for relief.  Plaintiff testified that her pain was

---

[3]Plaintiff's issues on appeal focus on the ALJ's findings related to her diabetic peripheral neuropathy and the RFC assessment related to Plaintiff's ability to stand or walk (Doc. 22).  As such, this summary primarily concerns Plaintiff's physical impairments and excludes some the testimony and records related to Plaintiff's mental health impairments.  To the extent Plaintiff's mental health testimony and records are also relevant to the issues on appeal, they are referenced accordingly.

worse with activity including lifting, bending reaching, and squatting.  Plaintiff indicated she was being followed by her primary care provider and did not see pain management. She reported that she recently started seeing a chiropractor and had begun the process to get a new orthopedic doctor. Plaintiff testified to having pain in both knees, with the left being the worse.  She had surgery on her right knee which helped her pain but has not had surgery on the left.  Plaintiff testified that she could stand for 15-20 minutes and sit for 30 minutes.  She stated she had been told not to lift more than a half-gallon of milk.

Plaintiff testified that her diabetes was managed with pills and insulin injections. She reported that she checks her blood sugar three times a day, and it had been averaging in the 300s.  She stated that she followed a diabetic diet and counts her carbohydrate intake, but that she still had ups and downs.  When asked if she had any conditions that developed as a result of her diabetes, Plaintiff answered "I don't think so. I don't." (Tr. 65). Plaintiff saw a rheumatologist once for her fibromyalgia and had her medications changed.  Plaintiff described symptoms, which included being tired and having pain and burning sensations in her back, knees, and joints.

Plaintiff reported that she had symptoms of depression, anxiety, and memory loss. She described a worsening memory, including forgetting appointments, forgetting what she is talking about mid-sentence, and forgetting to eat.  She stated that her moods are up and down, but she gets really down once or twice a year.  She was admitted for inpatient mental health services due to severe depression in February 2019.  She also described symptoms of crying spells, lack of motivation, and anxiety attacks.  Her anxiety was triggered by crowds and arguing with her children.  She also reported difficulty

concentrating.  She described treatment for her mental health, which included therapy and medication.

In August 2018, Plaintiff reported that she takes medications for diabetes, PTSD, bi-polar, anxiety, depression, pain, vitamin D deficiency, and blood pressure (Tr. 238-239, 343). These medications caused side effects, including dry mouth, fatigue, dizziness, and weakness (Tr. 50-77, Tr. 262).  Plaintiff testified that her activities of daily living included getting her sons on the bus for school and laying back down.  She stated that she would watch movies or TV.  She reported being able to microwave or use the stove, but that her children helped.  Plaintiff was able to fold laundry but could not stand to do dishes of sweep.  Plaintiff stated that it was hard to stand in the shower for long and she had difficulty shaving her legs due to bending.  Plaintiff reported losing her driver's license because of an insurance ticket, so her mother drove her to appointments and the grocery store.  Plaintiff testified that she has some good days, but that most days were bad days.

### B.      Medical Records

Plaintiff sustained a fall in November 2011 (Tr. 372, 376).  She underwent multiple surgeries, including in January 2012 (Tr. 412), March 2012 (Tr. 392), March 2013 (Tr. 372) and April 2014 (Tr. 363-367). In March 2016, Plaintiff was advised that skilled physical therapy could not offer any more relief for Plaintiff's pain (Tr. 531).

Plaintiff has a history of Type II diabetes mellitus (Tr. 395, 407, 431, 457).  In March 2016, Plaintiff's diabetic foot exam showed that Plaintiff could not feel her left pinky toe, but everything else was normal (Tr. 479). Plaintiff's assessment observed that her Type 2 diabetes mellitus was "without complications" and Plaintiff was advised to continue her

current medications and instructed "how to cover with sliding scale + meal short acting insulin" (Tr. 484).     From June 2016 to September 2016, Plaintiff's diabetes mellitus was "without complications" (Tr. 462, Tr. 469) although Plaintiff complained of swelling in her legs in September 2016 (Tr. 457-458). Specifically, in September 2016 Plaintiff reported left knee pain that was aggravated by bending, walking, standing, and getting in and out of a chair, and that her back pain was made worse by bending, lifting, walking, and standing (Tr. 457-458).  Her physical examination showed tenderness in the thoracic spine and mild pain with range of motion, crepitus in her left knee, along with tenderness and mildly reduced range of motion; however, her gait was normal (Tr. 461-462).  At this time, Plaintiff's blood sugar had been up and down, with the highest being around 300 (Tr. 457).  Plaintiff was to continue her current meds and prescribed pain medications (Tr. 461-462).

In January 2017, Plaintiff attended a consultative examination with Dr. Feinerman where she complained of back and knee pain, and pain all over from fibromyalgia (Tr. 596-609).  Plaintiff stated that she was able to walk 50 feet, stand for five minutes, and sit for 30 minutes, but squatting or bending hurt her back and knees (Tr. 597).  Her physical examination showed no abnormality of any extremity and no limitation of motion of any joint (Tr. 601).  Plaintiff ambulated normally without an assistive device and only had a mild limitation in squatting and arising (Tr. 601-602).  Her muscle strength was normal at 5/5 and there was no atrophy (Tr. 602).  Additionally, her straight leg raising was negative (Tr. 602).  A lumbar x-ray revealed an old, but stable mild L1 compression fracture and stable post-operative changes at L5-S1 (Tr. 607).

In February 2017, Plaintiff presented to the emergency room with complaints of back pain radiating down her left leg.  Her physical exam showed that range of motion was painful and decreased with flexion and extension, and that muscle spasm was appreciated in the left lower back and left mid back (Tr. 652-653).  Plaintiff's muscle tone was intact, and an x-ray of the lumbar spine showed no acute findings but there were surgical changes L1 and L5-S1 (Tr. 616-617, 653).  Imaging of the thoracic spine also revealed no acute findings but stable postsurgical changes at T7-T9 (Tr. 618-619).

In April 2017, Plaintiff presented with complaints of left knee pain and swelling with activity (Tr. 672).  Her physical exam showed an antalgic gait, tenderness, crepitus, and limited range of motion in her left knee (Tr. 672-675).  She reported that she had been using a knee immobilizer and crutches over the prior two months (Tr. 675).  X-rays of the bilateral knees revealed a laterally tilted patella (Tr. 674).  At this time, Plaintiff received an injection to the left knee, which she tolerated well (Tr. 675)  Provider John Wood, M.D. recommended medication and physical therapy (Tr. 675).

In May 2017, an MRI of Plaintiff's thoracic spine showed mild thoracic spondylosis and stable prior posterior fusion at T7-T9 with prior L1 vertebroplasty and a benign sub centimeter hemangioma in the T11 vertebral body (Tr. 681-682).      On May 23, 2017, an examination showed limited ambulation with an irregular gait and diabetic neuropathy (Tr. 691-692)

From September 2017 through July 2018, Plaintiff had limited medical treatment except for monthly medication management with Shawnee Health Services (Tr. 687-721).  At times, Plaintiff was ambulating with crutches and wearing a brace on the left knee and

had an irregular gait (Tr. 701, 705). Her A1C was high at 7.8 and she was instructed to watch her diet and monitor her glucose levels (Tr. 691-692). She received refills on her medications and her physical exams were mostly normal (Tr. 687-727). By July 2018, Plaintiff's diabetes was noted to be without complications, and although she was being diagnosed with chronic pain, her exam showed normal muscle tone, normal gait, and normal strength (Tr. 766-767). In October 2018, Plaintiff's physical exam remained the same with normal motor strength and tone, normal gait, and normal coordination (Tr. 1007-1014). In January 2019, Plaintiff's exam remained the same and her medications were refilled (Tr. 1001-1006).

In February 2019, a psychiatric admission showed that Plaintiff had a left knee x-ray which showed no acute abnormality of the left knee (Tr. 1172). Her lumbar x-ray showed post-operative changes at L5-S1, but no acute radiographic abnormality. However, there was a mild right convexity (Tr. 1172-1173).

### C.  Opinion Evidence

State Agency medical consultant, James Hinchen, M.D. recommended that Plaintiff be limited to a reduced range of medium level work, with frequent climbing ladders, ropes, and scaffolds, stooping, and crawling (Tr. 86). He noted that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, and hazards (Tr. 86-87). Upon reconsideration, State Agency medical consultant, Bharati Jhaveri, M.D., further reduced Plaintiff to the light exertional level, but agreed with the remainder of Dr. Hinchen's findings (Tr. 102-103).

Nurse Practitioner, Nick Turner, reduced Plaintiff's lifting to no more than 5-10 pounds (Tr. 711).  Dr. Feinerman opined that Plaintiff was able to sit, stand, walk, hear, speak, lift, carry, and handle objects (Tr. 596-609). Plaintiff's mother, Cynthia Tiedt, provided a third-party function report in statement indicating that Plaintiff had difficulty performing household activities and exertional activities due to pain (Tr. 269-278, 315-322).  Ms. Tiedt opined that Plaintiff was unable to lift more than a half-gallon of milk and could not walk more than five minutes before needing to rest (*Id.*).

## Analysis

Plaintiff raises one argument in favor of remand: that the RFC assessment was not supported by substantial evidence.  Plaintiff argues that the ALJ did not account for Plaintiff's diabetic peripheral neuropathy and the limitations it imposes on Plaintiff's ability to ambulate in crafting Plaintiff's RFC assessment, and that the ALJ further failed to point to substantial evidence to support the finding that Plaintiff can stand or walk, off and on, for approximately 6 hours in an 8-hour workday.

First, Plaintiff argues that the ALJ did not account for Plaintiff's diabetic peripheral neuropathy and the limitations it imposes on Plaintiff's ability to ambulate at all in his RFC assessment (Doc. 22, p. 11).  However, Plaintiff ignores the ALJ's specific findings concerning her diabetes mellitus.  Specifically, the ALJ found that Plaintiff's diabetes is a severe impairment (Tr. 30).  The ALJ also considered the effect of Plaintiff's diabetes on Plaintiff's function under section 9.00 and other body systems (Tr. 32).  The ALJ ultimately concluded that Plaintiff's diabetes "has not caused listing-level symptoms under any body system."  (Tr. 32).  Nevertheless, the ALJ considered Plaintiff's

statements and medical records concerning her diabetes and diabetes management in crafting Plaintiff's RFC (Tr. 35, Tr. 38). Also, relevant here, Plaintiff did not argue at her hearing that her diabetes caused any conditions, such as peripheral neuropathy (Tr. 65) (ALJ: "Do you have any conditions that you've developed as a result of the diabetes? Plaintiff: I don't think so. I don't.").

The determination of RFC is an administrative finding that is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). The ALJ was not required to base his RFC assessment on a medical opinion, although he "must consider the entire record." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Further, The ALJ's decision must be read as a whole and be given a commonsensical reading rather than nitpicking. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015); *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). Here, the ALJ's discussion of the medical evidence, and specially the weight he gave to the examinations by Plaintiff's treating providers, medical imaging, and lab reports, makes it clear that the ALJ concluded that Plaintiff's diabetes was "without complication" and did not cause any additional complications, such as an impact on her ability to ambulate (Tr. 38-41). Further, the ALJ observed that Plaintiff had normal muscle tone, gait, and strength. Nevertheless, Plaintiff's diabetes, in combination with Plaintiff's other severe impairments required a reduced range of light level work (Tr. 38-41).

While the ALJ did not point to direct evidence that Plaintiff's diabetes caused limited mobility because of diabetic peripheral neuropathy, the ALJ did weigh the evidence and conclude that the record did not support a determination that Plaintiff could not work. The ALJ provided adequate discussion on the issues and was not

required to complete a written evaluation of every piece of evidence. *Curvin*, 778 F.3d at 650 (citing *Pepper v.* Colvin, 712 F.3d 351 (7th Cir. 2013)); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012. Ultimately, it was Plaintiff's burden, not the ALJ's, to prove that she was disabled. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). An ALJ adequately supports his RFC determination when he "consider[s] all limitations supported by [the] record evidence" and "tie[s] the record evidence to the limitations included in the RFC finding." *See Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019). Here, the ALJ fashioned an appropriate RFC supported by substantial evidence.

Next, Plaintiff argues that the evidence did not demonstrate that she is capable of light exertional work, and specifically the capability to engage in standing or walking, off and on, for approximately 6 hours of an 8-hour workday (Doc. 22, p. 13). "Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. A job in this category requires much walking or standing (off and on, for a total of approximately six hours of an eight-hour workday), and, if sitting, it involves some pushing and pulling of the arms or legs." *Diaz v. Charter*, 55 F.3d 300, 306 (7th Cir. 1995) (citing 20 C.F.R §§ 404.1567(b), 416.967(b); *Herron v. Shalala*, 19 F.3d 329, 332 n.7 (7th Cir. 1994)).

Here, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b) except she can frequently climb ladders, ropes, or scaffolding (Tr. 34). Further, she "can persist at and complete work activity for the usual periods required in the general work force, which would be the two-hour segments that make up an eight-hour workday" and "can perform at minimally acceptable rates, requiring only the

common frequency and lengths of rest breaks." (Tr. 34). This finding was supported by substantial evidence. In fact, the ALJ's RFC assessment accounted for the limitations credibly established by the evidence of record. As the ALJ concluded, Plaintiff was treated conservatively for her physical conditions, and reported improvement with medications. Plaintiff's condition remained largely unchanged through this period. Plaintiff often displayed a full range of motion, and although she testified to difficulty standing or walking, the ALJ provided sufficient reasons for concluding that Plaintiff's testimony as to her impairments was not entirely consistent with the objective medical evidence.

While the ALJ did not specifically articulate that Plaintiff could stand or walk, off and on, for approximately 6 hours of an 8-hour workday in concluding that Plaintiff could perform light work, the ALJ was not required to do so. As one district court has persuasively reasoned, in assessing a claimant's RFC, the ALJ is not required to provide a "detailed function-by-function assessment of Plaintiff's ability to perform the numerous work-related tasks." *See Knox v. Astrue*, 572 F.Supp.2d 926, 939 (N.D. Ill. 2008). Further, because the RFC "describes the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record" the Commissioner is not required to "articulate in detail the claimant's ability to sit, stand, or walk for long periods of time." *Id.* (citing *Lewis v. Astrue*, 518 F.Supp.2d 1031, 1043 (N.D. Ill. 2007) and *Corder v. Barnhart*, 2004 WL 1381125, at *6 (N.D. Ill. 2004)). "Only if the ALJ found that Claimant's ability to sit, stand, or walk was compromised would the burden of discussion fall on the ALJ. *Id.* Therefore, while the ALJ did not specifically articulate

that Plaintiff could stand or walk for approximately 6 hours of an 8-hour workday, it is clear from the ALJ's discussion that he weighed the evidence and concluded that the record did not support a determination that Plaintiff could not work.   The RFC was therefore supported by substantial evidence.

Even assuming, *arguendo,* that there was not support for the finding that Plaintiff could perform light work, it ultimately would not matter. The vocational expert also identified several positions at the sedentary level that Plaintiff could perform (Tr. 9-10). Even if Plaintiff cannot perform the demands of light work, there is clearly substantial evidence to support a finding that she can perform sedentary work with a sit/stand option.   Plaintiff herself indicated in a disability report dated June 2017 that she was unable to sit or stand for more than 15-20 minutes (Tr. 303-313) and that she could lift up to a half gallon of milk (Tr. 308).   At the evidentiary hearing, she clarified that she could stand or walk around for 15-20 minutes and that she could not sit for longer than 30 minutes before she had to get up and move around (Tr. 58).

By her own account, therefore, she could meet the requirements of sedentary work with a sit/stand option.   *See* 20 C.F.R. § 416.967 (explaining that "[s]edentary work involves lifting no more than 10 pounds at a time" and occasional walking and standing); SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983) (explaining that occasional walking and standing means "no more than about 2 hours of an 8-hour workday," with sitting accounting for the remaining 6 hours).   Plaintiff's ability to do sedentary work, which is clearly supported by substantial evidence, requires affirming the ALJ's determination. *See Diaz v. Charter*, 55 F.3d 300, 307 (7th Cir. 1995) (citing *Johnson v. Bowen*, 851 F.2d 748,

751 (5th Cir. 1988) (upholding district court's decision that, even though SSA's determination that claimant could perform light work was not supported by substantial evidence, SSA's ruling could be affirmed because "there was substantial evidence in the record to support a conclusion that [the claimant] could perform sedentary work.").

Finally, Plaintiff argues that the ALJ's failure in developing the RFC means the vocational expert had insufficient information to posit appropriate limitations in his hypothetical findings (Doc. 22, pp. 15-16). As mentioned above, the ALJ's RFC was supported by substantial evidence. Further, Plaintiff did not question the vocational expert's testimony on cross examination (Tr. 11-12). "An ALJ may rely on imperfect VE testimony if the claimant does not question the basis for the testimony at the time of the hearing." *Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002) and *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004)). Nevertheless, the "ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). The ALJ clearly identified Plaintiff's diabetes mellitus as a severe impairment, but ultimately concluded that her diabetes "has not caused listing -level symptoms under any body system." (Tr. 32). Accordingly, the ALJ was not required to proffer hypothetical limitations concerning Plaintiff's diabetes peripheral neuropathy when he had previously concluded that her diabetes had not caused any other limitations or conditions.

In the end, Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. She has not identified any error requiring remand. Even if

reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester v. Berryhill,* 920 F.3d 507, 510 (7th Cir. 2019); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**SO ORDERED.**

Dated: September 16, 2021

_____
DAVID W. DUGAN
United States District Judge